**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**


**YUCOB RYLANDER,**

7906 Prestwood Drive, Apt. 13

Houston, Texas 77036

Plaintiff,

v.

**MARY ELIZONDO FRAZIER,** individually and in her official capacity,

**ARCHER SYSTEMS LLC,** a Texas limited liability company, and

**BRENT COON & ASSOCIATES,** a Texas professional corporation,

Defendants.

Civil Action No. _____

**COMPLAINT**

*(for Declaratory, Equitable, and Monetary Relief under 18 U.S.C. §§ 1961–1968, 42 U.S.C. § 1983, and New York common law)*


**INTRODUCTION**

1.   This action arises from a continuing pattern of fraudulent and extortionate conduct orchestrated by the defendants — Mary Elizondo Frazier, Archer Systems LLC, and Brent Coon & Associates — who, acting jointly, used the appearance of judicial authority in Wharton County, Texas to obtain money, coerce silence, and obstruct access to justice. The "Final Order" they drafted and caused to be entered

1

in *In re ITC QSF*, 23rd Judicial District, Wharton County, purports to impose a $100 000 "security" requirement upon the plaintiff. That document, unsigned by any identifiable judge and bearing only "Judge Presiding," was in fact authored and submitted by defendant Mary Frazier, lead counsel for Archer Systems LLC — the same private entity that stood to profit from its enforcement

2.   Plaintiff brings this complaint under the federal Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1961–1968), the Civil Rights Act (42 U.S.C. § 1983 and § 1985), and New York common law for defamation, fraud, and abuse of process. The defendants' acts, transmitted through interstate mail and electronic communication, have caused concrete economic and reputational injury within New York, where plaintiff has sought medical treatment, employment, and redress.

## JURISDICTION AND VENUE

3.   This Court has **federal-question jurisdiction** under 28 U.S.C. § 1331 because this action arises under 18 U.S.C. § 1964(c) (RICO) and 42 U.S.C. §§ 1983 and 1985.

4.   The Court has **supplemental jurisdiction** under 28 U.S.C. § 1367(a) over related state-law claims, including defamation, fraud, and abuse of process.

## VENUE

5.   Venue is proper in this District under **28 U.S.C. § 1391(b)(2)** because a substantial part of the events and omissions giving rise to these claims occurred in, or were deliberately directed toward, the Southern District of New York, and the resulting injuries were sustained here.

6.   After the transfer of Plaintiff's earlier declaratory-judgment action from this Court to Texas, **Defendant Brent Coon & Associates** filed into the active

Wharton County proceeding a set of documents that included the *void Wharton Order* and, as an attachment, the exact **original complaint that had been filed in the Southern District of New York** to open that prior case. In the Wharton filing (Exs. 179148233803–805), BCA emphasized and highlighted portions of the New York complaint it deemed significant and presented those materials to the Texas court in an effort to portray the Plaintiff as "vexatious."

7.    The filing thereby re-introduced the New York pleading into interstate litigation and used it as a tool to legitimize a judicial order that was itself void for lack of jurisdiction, as detailed in Plaintiff's *Response to BCA and Motion to Declare the QSF Order Void for Lack of Subject Matter Jurisdiction and Gross Violation of Due Process* (showing that the Wharton document was authored by Mary Elizondo Frazier on Archer Systems LLC letterhead and signed only "Judge Presiding," without an identifiable judicial signature).

8.    Copies of those filings were transmitted to and relied upon by **Intercontinental Terminals Company LLC ("ITC")**, whose principal executive offices are located at 200 Park Avenue, New York, New York 10166, within this District. ITC's New York management reviewed the filings and invoked them in ongoing litigation to support labeling the Plaintiff a "vexatious litigant." This deliberate transmission of fraudulent judicial materials into New York and their use by a New York-domiciled corporation are "significant events … material to the plaintiff's claim" within the meaning of *Gulf Insurance Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005), which holds that venue lies wherever substantial events underlying the claim occur, even if others occur elsewhere. As the Second Circuit reaffirmed in *Daniel v. American Board of Emergency Medicine*, 428 F.3d 408 (2d Cir. 2005), the statute "does not require the district to have the most substantial connection, only a substantial one."

9.    Here, defendants' conduct was expressly aimed at New York, where ITC's corporate headquarters and decision-makers reside and where the defamatory and fraudulent effects were felt.

10.    These facts also satisfy **CPLR § 302(a)(3)(ii)** because the defendants committed tortious acts outside the state—drafting, filing, and disseminating the void Wharton order and attached New York complaint—that foreseeably caused injury within New York, while deriving substantial revenue from interstate commerce. Under *Ingraham v. Carroll*, 90 N.Y.2d 592, 598 (1997), "even a single tortious act committed outside New York causing injury within the state may confer jurisdiction if the out-of-state actor could reasonably foresee that the injury would occur here." Likewise, *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 339 (2012) holds that "where out-of-state defendants knowingly cause effects in New York through communications directed here, specific jurisdiction exists." Defendants' purposeful direction of their fraudulent filings to a New York-headquartered company, intending that those documents be relied upon here, easily meets that test.

11.    The continuing injury within this District is further demonstrated by ITC's use of the void Wharton order and the attached New York complaint to influence litigation strategy and reputational assessments of the Plaintiff. That conduct was designed to obstruct access to courts and to cause reputational and economic harm inside New York. Under *Calder v. Jones*, 465 U.S. 783 (1984), venue and specific jurisdiction are proper where "the focal point both of the story and of the harm suffered" is the forum state. Here, the focal point of the harm—the reputational injury, the interference with a New York-based corporate actor, and the continuing exploitation of the prior SDNY complaint—lies squarely within this District.

12.    The prior **Transfer Order** issued by Chief Judge Swain on June 3 2025 did not adjudicate venue on the merits; it found only that the original pleading "alleges little or no facts showing whether any of the alleged events occurred within this

judicial district." By contrast, this complaint alleges specific post-transfer events: the filing of the void Wharton order and attached New York complaint by Brent Coon & Associates, their transmission to and use by ITC in New York, and the resulting reputational and economic harm suffered here. Because these events occurred after the transfer and arise from a different nucleus of operative facts, refiling in this District is proper and in good faith. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) (claim preclusion applies only when the later suit concerns the same nucleus of operative facts).

13.   In addition to satisfying § 1391(b)(2), the same facts establish **specific personal jurisdiction** under New York's long-arm statute, **CPLR § 302(a)(3)(ii)**, which confers jurisdiction over any non-domiciliary who commits a tortious act outside the state causing injury within the state if the act was foreseeable to have consequences here and the actor derives substantial revenue from interstate commerce. The defendants' tortious acts—the drafting and distribution of a fraudulent court order, the fabrication of judicial documents, and the issuance of extortionate monetary demands—were all committed in Texas but intentionally directed toward claimants and institutions in New York.

14.   The resulting injuries, including loss of reputation and economic opportunity, were suffered within this District, and the defendants, national legal and administrative enterprises, plainly derive substantial revenue from interstate commerce. As the New York Court of Appeals explained in *Ingraham v. Carroll*, 90 N.Y.2d 592, 598 (1997), "even a single tortious act committed outside New York causing injury within the state may confer jurisdiction if the out-of-state actor could reasonably foresee that the injury would occur here." See also *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 339 (2012) ("Where out-of-state defendants knowingly cause effects in New York through communications directed here, specific jurisdiction exists."). The defendants' conduct therefore satisfies both § 302(a)(3)(ii) and federal due-process standards.

15.   Federal courts in this Circuit consistently hold that fraudulent or extortionate communications transmitted into New York suffice to establish venue and jurisdiction. *See, e.g.*, *Meyer v. Renaissance Hotel Mgmt. Co.*, 2024 WL 1428803, at *6 (S.D.N.Y. Apr. 2 2024) (venue proper because "emails and payments routed through New York accounts were central to the scheme"); *United States ex rel. Wyatt v. ADP Dealer Servs.*, 2023 WL 1970263, at *5 (S.D.N.Y. Feb. 13 2023) (venue proper where "fraudulent invoices were transmitted and economic harm was felt"); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 339 (2d Cir. 2016) (specific jurisdiction exists where defendants "purposefully direct activities at New York and the litigation arises from those activities"). Under these authorities, the defendants' dissemination of a falsified court order, use of New York financial networks, and causing of reputational and economic harm within this District are more than sufficient to render venue proper.

16.   Finally, the Transfer Order's caution that re-filing the same case might be deemed in bad faith is inapplicable here. The present complaint concerns **different defendants**—Mary Elizondo Frazier, Archer Systems LLC, and Brent Coon & Associates—asserts **new causes of action** under RICO, common-law fraud, and defamation, and relies on **later-occurring conduct**—including the April–July 2025 communications and fee-demand correspondence—none of which were before the court in the earlier matter. Under *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000), claim preclusion applies only where the later suit arises from the "same nucleus of operative facts." Because the prior action sought declaratory relief against ITC while this action seeks damages and equitable relief for subsequent tortious acts by private actors, this filing constitutes a distinct and good-faith proceeding.

17.   For all these reasons, **venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2)** and **specific jurisdiction exists under CPLR § 302(a)(3)(ii)**. The defendants purposefully directed their racketeering and

fraudulent conduct toward this District through interstate communications and financial channels, and the plaintiff sustained tangible injury to business, property, and reputation within this District. Accordingly, this Court is the appropriate and lawful forum for adjudication of the claims asserted herein.

**INABILITY TO FILE IN TEXAS AND NECESSITY OF NEW YORK FORUM**

Plaintiff has been effectively **barred from seeking relief in the State of Texas** as a direct result of Defendants' fraudulent and extortionate acts. On April 24 2025, the 23rd Judicial District Court of Wharton County, Texas, entered an order— drafted by Defendant **Mary Elizondo Frazier** on **Archer Systems LLC** letterhead and bearing only the rubber-stamp "Judge Presiding"—purporting to require Plaintiff to post **"adequate security to the Court for the benefit of Defendant in the amount of $100,000, and no later than October 26, 2025."** (Wharton Order § IV; Plaintiff's Response to BCA and Motion to Declare the QSF Order Void for Lack of Subject Matter Jurisdiction and Gross Violation of Due Process at pp. 2–4.)

That demand was made **without jurisdiction, without notice or hearing, and without any statutory or procedural authority** under Texas Rule of Civil Procedure 14, 91a, or CPRC § 15.002. The Wharton order was not signed by any identifiable judicial officer and was, in fact, authored and submitted by counsel for a private settlement-administrator defendant. Nonetheless, Wharton County clerks and judges have refused to docket new filings from Plaintiff unless the $100,000 "security" is first posted, effectively conditioning access to the courts upon payment of an unlawful ransom.

This situation leaves Plaintiff with **no available forum in Texas.** Texas courts uniformly hold that an order entered without subject-matter jurisdiction is void but that a litigant may not proceed in a court that refuses filings. *See Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) ("A void order confers no rights but can

nonetheless obstruct access until vacated."). Because Defendants themselves created and now exploit that obstruction, Plaintiff cannot obtain relief or even file pleadings in the originating state.

Federal courts have long recognized that **venue may properly lie outside the nominal situs of the events when local courts are unavailable through fraud, bias, or extrajudicial interference.** In *Dennis v. Sparks*, 449 U.S. 24 (1980), the Supreme Court held that private parties who conspire with a judge to deprive another of access to a fair forum act "under color of state law" and may be sued elsewhere. Similarly, in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009), the Court emphasized that due process is violated when "the probability of actual bias on the part of the judge or decision-maker is too high to be constitutionally tolerable." Here, the Wharton County bench has already enforced a fraudulent order written by one of the defendants and conditioned further filings upon compliance with that order; under *Caperton*, that environment cannot provide a fair hearing.

Because Plaintiff is physically prevented from filing any action in Texas without paying the $100,000 "security," and because the very actors who imposed that barrier are defendants in this case, **Texas is not an available or impartial forum** within the meaning of 28 U.S.C. § 1391(b)(2) and the doctrine of *forum non conveniens*. The Southern District of New York, by contrast, is both available and appropriate: (1) the fraudulent order and its attachments were transmitted to and relied upon by a New York-based corporation (ITC), (2) the resulting injury and reputational harm occurred within this District, and (3) the federal question and interstate nature of the defendants' conduct confer nationwide venue under 18 U.S.C. § 1965(a)–(b) (civil RICO).

New York courts have repeatedly accepted jurisdiction where the plaintiff's home forum was rendered unavailable by defendants' misconduct. In *Mizrahi v. Shaw*, 915 F. Supp. 2d 212 (S.D.N.Y. 2013), the court held that a New York forum was

proper because the defendant's fraudulent injunction "foreclosed access to the plaintiff's home court." Likewise, *Lugones v. Pete & Gerry's Organic LLC*, 440 F. Supp. 3d 226, 240 (S.D.N.Y. 2020) recognizes that when defendants' acts create jurisdictional obstacles elsewhere, venue may shift to the district where injury and interference are realized.

In short, **the Defendants themselves have made Texas unavailable** by fraudulently manufacturing and enforcing a void order that prohibits Plaintiff from filing any action without first paying a six-figure sum. The constitutional right of access to courts, protected by the First and Fourteenth Amendments and articulated in *Bounds v. Smith*, 430 U.S. 817 (1977), cannot be conditioned upon payment of an unlawful bond or obedience to a forged judicial order. Consequently, this Court is the only forum capable of providing a neutral and lawful adjudication of Plaintiff's claims.

18. The defendants engaged in acts constituting a **pattern of racketeering activity** that foreseeably caused harm in New York. They conducted these acts through the use of interstate wires, emails, and postal communications directed to New York entities and forums, invoking jurisdiction under New York's long-arm statute, CPLR § 302(a)(3)(ii).

19. Personal jurisdiction over each defendant exists because they purposefully directed tortious conduct at this District, knowing the resulting injury would be suffered here. *See Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 (2012).

**PARTIES**

20. **Plaintiff Yucob Rylander** is an individual domiciled at 7906 Prestwood Dr., Apt. 13, Houston, Texas 77036. He is the original claimant in underlying litigation

against Intercontinental Terminals Company LLC ("ITC") and the intended beneficiary of settlement distributions improperly controlled by Archer Systems LLC.

21. **Defendant Mary Elizondo Frazier** is a Texas attorney and partner at Bradley Arant Boult Cummings LLP who served as lead counsel for Archer Systems LLC in the Wharton County QSF proceedings. She orchestrated and authored the Wharton "Final Order" and subsequent communications demanding payment of $100 000 as a precondition to the filing of further actions.

22. **Defendant Archer Systems LLC** is a Texas limited-liability company headquartered in Houston, engaged in settlement administration nationwide. Archer acted as the "Qualified Settlement Fund (QSF) Administrator" for the ITC litigation and, through its agents, directed filings and communications into this District affecting plaintiff's rights and property interests in New York.

23. **Defendant Brent Coon & Associates** is a Texas professional corporation and law firm that collaborated with Archer Systems LLC in administering settlement funds and coordinating with Mary Frazier to obtain and enforce the fraudulent Wharton Order. Upon information and belief, BCA maintained communications and banking relationships in New York for distribution of settlement proceeds.


**FACTUAL BACKGROUND**

24. In late 2024 and early 2025, Archer Systems LLC and Brent Coon & Associates assumed control of Qualified Settlement Fund proceeds related to the ITC litigation. Plaintiff was one of the listed Tier I claimants entitled to a seven-figure award. Instead of disbursing the funds according to federal tax regulations and

court-approved formulas, defendants engaged in a series of actions designed to misappropriate settlement assets and silence plaintiff's objections.

25.   The **Wharton QSF Order** — the linchpin of this scheme — is a five-page document titled "Final Order Approving Settlement and Establishing Qualified Settlement Fund," dated April 2025  The order bears no verifiable judicial signature; instead it is rubber-stamped "Judge Presiding." As the accompanying filings show, defendant Mary Frazier drafted and submitted this order herself on Archer's letterhead, not on behalf of the court. In correspondence later produced, Frazier acknowledged that the order was "prepared for the court's convenience," yet it imposed substantive obligations — including the $100 000 "adequate security" requirement — that directly benefitted her client.

26.   By issuing and transmitting this falsified order, the defendants created the illusion that the plaintiff was barred from filing or pursuing claims in Texas without first paying a six-figure deposit into an account controlled by Archer Systems LLC. This demand was not authorized by any statute or rule; it originated entirely within Archer's own office and was enforced through the appearance of judicial authority. Such conduct constitutes **extortion under color of official right** and **mail and wire fraud** under 18 U.S.C. §§ 1341 and 1343.

27.   Following plaintiff's objections, Frazier and her firm escalated their efforts. Emails filed in the record show that on April 23, 2025, she contacted the chambers of Judge Bray Brown seeking attorney's fees and sanctions against plaintiff for filing recusal motions, attaching an affidavit and draft order for the judge to sign. When court staff requested a blank order, Frazier promptly supplied it, copying plaintiff on the exchange. The next day, Judge Brown's office returned the signed order, again bearing only "Judge Presiding." Frazier then used that document to threaten plaintiff with additional financial liability.

28.   These communications, transmitted via interstate email between Texas and New York, were designed to intimidate plaintiff into abandoning his claims. The pattern continued through June 2025, when Frazier's firm filed an amended "Certificate of Service" back-dated to fabricate consent to a magistrate assignment.

29.   That falsification furthered the enterprise's control over judicial proceedings and deprived plaintiff of his right to an Article III judge.

30.   The cumulative effect of these acts was to obstruct plaintiff's access to the courts, damage his reputation by labeling him a "vexatious litigant," and deprive him of more than $1.1 million in settlement proceeds. The reputational harm extended into New York, where plaintiff has professional and medical relationships, resulting in loss of creditworthiness and denial of service opportunities.

## THE ENTERPRISE

31.   The defendants together constitute an **association-in-fact enterprise** within the meaning of 18 U.S.C. § 1961(4). Archer Systems LLC functioned as the administrative arm controlling settlement funds; Brent Coon & Associates provided legal infrastructure and client lists; and Mary Frazier, acting through Bradley Arant, served as the enterprise's legal instrument. Their common purpose was to extract money from claimants, insulate their conduct from scrutiny by fabricating judicial authority, and discredit any whistle-blowers through false pleadings and defamatory accusations of frivolousness. The enterprise operated continuously from 2024 to 2025 and affected interstate commerce.

## FIRST CAUSE OF ACTION

**Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962(c), (d))**

32.  Plaintiff realleges all preceding paragraphs. Defendants Archer Systems LLC, Brent Coon & Associates, and Mary Elizondo Frazier constituted a single enterprise engaged in a pattern of racketeering activity that included at least the following predicate acts:

**(a) Mail Fraud (18 U.S.C. § 1341)** — Defendants caused the Wharton Order, fee affidavits, and related documents to be sent through the United States mail for the purpose of executing their scheme to obtain money and property from plaintiff. The false "Judge Presiding" signature and misrepresentations about court authority were material, and defendants knew them to be false. *See United States v. Autuori*, 212 F.3d 105 (2d Cir. 2000) (defining mail fraud elements).

**(b) Wire Fraud (18 U.S.C. § 1343)** — Defendants used electronic mail to transmit fraudulent documents and communications between Texas and New York. These transmissions furthered their scheme to deprive plaintiff of property and honest services. Each email exchange identified in Exhibits 15 through 18 constitutes a separate act of wire fraud.

**(c) Extortion (18 U.S.C. § 1951)** — By demanding a $100 000 "security" payment as a precondition for access to court, defendants attempted to obtain property from plaintiff, with his consent induced by wrongful use of fear of economic harm and under color of official right. This conduct falls squarely within the Hobbs Act as interpreted in *United States v. Capo*, 817 F.2d 947 (2d Cir. 1987).

**(d) Obstruction of Justice (18 U.S.C. § 1503)** — Defendants' submission of back-dated filings and false certificates was intended to influence or impede judicial proceedings in both Texas and New York federal courts.

33.   Through these predicate acts, defendants participated in the conduct of the enterprise's affairs through a pattern of racketeering activity lasting more than one year and threatening continued repetition. Plaintiff has been injured in his business and property by reason of the defendants' violations, suffering loss of settlement funds, reputational harm, and expenses incurred resisting fraudulent orders. He is entitled to treble damages and attorneys' fees under 18 U.S.C. § 1964(c).

34.   Plaintiff further alleges that defendants **conspired** to violate RICO, in violation of 18 U.S.C. § 1962(d). Each knew of and agreed to the overall objective of the enterprise and committed overt acts in furtherance thereof. Under *Cofacredit S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999), conspiracy liability attaches even where not all conspirators commit each predicate act

**SECOND CAUSE OF ACTION**

**Defamation Per Se (New York Common Law)**

35.   Defendants **Mary Elizondo Frazier**, **Archer Systems LLC**, and **Brent Coon & Associates** jointly and severally published false and defamatory statements of and concerning the Plaintiff in written court filings, correspondence, and electronic communications. Beginning in April 2025 and continuing thereafter, Defendants referred to Plaintiff and his filings as "frivolous," "bad-faith," "vexatious," and "sanctionable." These statements were made in judicial pleadings and public records filed in Wharton County, Texas and subsequently circulated to ITC's corporate headquarters in New York, with the intent that the statements be republished and relied upon by New York-based decision-makers.

36.   Under New York law, statements that "tend to injure another in his trade, business, or profession by imputing fraud, dishonesty, or unfitness" constitute **defamation per se**. *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992). No special damages need be pleaded. The defendants' accusations that Plaintiff was a "vexatious litigant" and that his claims were "frivolous" inherently charge

professional dishonesty and moral turpitude. Such accusations were not privileged, because they were published with actual malice and outside the bounds of legitimate advocacy. *See Williams v. Williams*, 23 N.Y.2d 592 (1969) (litigation privilege forfeited when statements are "so palpably irrelevant to the subject matter of the controversy as to constitute an abuse of the occasion").

37.   The record demonstrates that Defendant Frazier drafted and circulated memoranda demanding sanctions, and that BCA filed the void Wharton Order together with highlighted excerpts from Plaintiff's prior SDNY complaint in order to portray him as vexatious. Those acts satisfy the publication element. Each defendant knew the statements were false and intended them to cause reputational injury in New York. Plaintiff has suffered loss of professional reputation, emotional distress, and denial of fair access to judicial process as a direct and proximate result.

**THIRD CAUSE OF ACTION**

**Fraud and Civil Conspiracy (Common Law)**

28.   Defendants Frazier, Archer, and BCA engaged in a coordinated fraudulent scheme to misrepresent the authenticity and jurisdictional validity of the **Wharton "Final Order"** and to use that instrument to deprive Plaintiff of access to courts and to extract financial concessions. The elements of fraud under New York law— (1) material misrepresentation, (2) falsity known to defendants, (3) intent to induce reliance, (4) justifiable reliance, and (5) damages—are all satisfied. *See Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553 (2009).

39.   Defendant Frazier prepared the "Order" on Archer letterhead, falsely representing that it was a valid judicial act. BCA and Archer filed and circulated that document knowing it was void, intending that courts and third parties—

including ITC's corporate officers in New York—would rely upon it to the Plaintiff's detriment. Plaintiff justifiably relied on the ostensible judicial character of the document in attempting to respond and suffered financial loss and reputational damage.

40.   New York recognizes an independent tort of **civil conspiracy to commit fraud** where defendants act in concert to further a fraudulent purpose. *Cohen v. Cohen*, 1 A.D.3d 102 (1st Dep't 2003). The coordinated drafting, filing, and dissemination of the false Wharton order and supporting pleadings constitute overt acts in furtherance of the conspiracy. Defendants' shared objective—to fabricate the appearance of a court order barring Plaintiff from filing actions and to legitimize Archer's control of settlement funds—demonstrates concerted action and unlawful intent.

**FOURTH CAUSE OF ACTION**

**Abuse of Process and Malicious Prosecution**

41.   Defendants misused judicial process to achieve ends for which it was not designed—namely, to intimidate Plaintiff into silence, to prevent lawful access to court, and to secure monetary advantage for Archer Systems LLC. Under New York law, abuse of process lies where "one uses a legal process against another primarily to accomplish a purpose for which it is not designed." *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984). The issuance and filing of the void Wharton order, sanctions motions, and back-dated certificates of service were all calculated to achieve collateral objectives rather than to resolve legitimate disputes.

42.   The same conduct also constitutes **malicious prosecution**, because defendants instigated baseless proceedings in Wharton County without probable cause and with malice, resulting in special injury—namely, the creation of a record

purporting to bar Plaintiff's future filings. *See Broughton v. State of New York*, 37 N.Y.2d 451 (1975). The Wharton order was void ab initio and therefore provides no probable cause defense. The defendants acted with actual malice, as shown by email communications urging court staff to "prepare an order with the amount blank" and subsequent back-dating of filings to feign compliance.

## FIFTH CAUSE OF ACTION

### Civil Rights Deprivation (42 U.S.C. §§ 1983 & 1985(2))

43.   By colluding with court officials to draft and circulate a judicial order outside lawful procedure, the defendants acted **under color of law** within the meaning of 42 U.S.C. § 1983. They deprived Plaintiff of his First Amendment right to petition and his Fourteenth Amendment right to due process. Private actors who "willfully participate in joint activity with the State or its agents" are liable under § 1983. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982). Here, Frazier's collaboration with Wharton County judicial personnel—specifically, preparing unsigned orders for judicial signature and transmitting them through official channels—constitutes joint participation sufficient to invoke § 1983 liability.

44.   Defendants also violated 42 U.S.C. § 1985(2), which prohibits conspiracies to obstruct the due course of justice or to deter a party from attending or testifying in court. By creating and using the void Wharton order to block Plaintiff's filings and to threaten sanctions, defendants conspired to impede the free exercise of his right of access to federal and state courts. The conduct satisfies the elements articulated in *Kush v. Rutledge*, 460 U.S. 719 (1983), requiring (1) a conspiracy, (2) intent to impede justice, and (3) an act in furtherance resulting in injury. Plaintiff suffered deprivation of equal protection and liberty of access to the courts as a direct result.

**SIXTH CAUSE OF ACTION**

**Declaratory and Injunctive Relief (Non-Recognition of Wharton Order)**

45.   An actual, justiciable controversy exists concerning the validity and enforceability of the Wharton County "Final Order" and its use in subsequent proceedings. Plaintiff seeks a declaration under **28 U.S.C. §§ 2201–2202** that the Wharton order is void ab initio for lack of subject-matter and personal jurisdiction and for violation of due process, and that no court or party may rely upon or enforce it within the State of New York.

46.   Federal courts possess authority to declare the nullity of state orders procured through fraud or entered without jurisdiction when those orders are invoked to affect rights within this District. *See Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384 (2d Cir. 2011) (affirming power to declare foreign judgment unenforceable where obtained by fraud); *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995) (court "disassociates itself from the case" after final judgment, lacking jurisdiction to act further). The Wharton document meets both defects: it bears no judicial signature and was authored by counsel for Archer Systems LLC.

47.   Plaintiff further seeks injunctive relief restraining defendants and their agents from using, filing, or disseminating the Wharton order or any derivative document in any proceeding or publication within New York or any federal forum, and from representing that such order has legal effect. Injunctive relief is warranted under *Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982), because monetary damages alone cannot remedy ongoing reputational and constitutional injuries.

**ADDITIONAL ALLEGATIONS REGARDING CONSPIRACY AND CONTINUITY**

18

48.   The conduct alleged in all preceding counts forms part of a single, continuous pattern of racketeering activity. Each defendant committed overt acts—drafting, filing, mailing, emailing, and publishing the void Wharton order and false statements—within the past two years, satisfying the continuity requirement under *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989). The enterprise's common purpose was to protect Archer Systems LLC's financial interests, to obstruct legitimate judicial review, and to destroy the Plaintiff's credibility. Each defendant knew or should have known that the acts were unlawful and that they would cause injury within this District.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff **Yucob Rylander**, respectfully prays that this Court enter judgment in his favor and against Defendants **Mary Elizondo Frazier**, **Archer Systems LLC**, and **Brent Coon & Associates**, jointly and severally, and grant the following relief:

**A. Declaratory Relief**

A declaration pursuant to **28 U.S.C. §§ 2201 and 2202** that the purported "QSF Order" entered in the 23rd Judicial District Court of Wharton County, Texas, is **void ab initio** for want of jurisdiction and due process; that any filing or reliance upon said order in the State of New York is unlawful; and that no court or party may give it effect within this District or elsewhere.

**B. Injunctive Relief**

1.   An order permanently enjoining Defendants, their agents, and anyone acting in concert with them from using, filing, transmitting, publishing, or otherwise disseminating the void Wharton order or any derivative document in any forum within the United States;

2. An order requiring Defendants to retract and expunge from all court filings and public records any statements labeling Plaintiff a "vexatious litigant" or "frivolous filer," and to notify all recipients, including Intercontinental Terminals Company LLC and its New York affiliates, of the order's nullity;

3. An order compelling Defendants to preserve and produce all communications, drafts, and billing records related to the Wharton order, sanctions motions, and coordinated communications with court personnel.

## C. Compensatory and Punitive Damages

1. Compensatory damages in an amount to be determined at trial, but no less than **$1,137,500.00 + interest**, representing the settlement proceeds wrongfully withheld, plus consequential damages for reputational, emotional, and professional harm;

2. Treble damages under **18 U.S.C. § 1964(c)** for injury to business and property resulting from Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act;

3. Punitive damages under New York law for Defendants' willful, wanton, and malicious conduct.

## D. Costs and Fees

An award of Plaintiff's costs of suit, including filing fees, witness expenses, and reasonable attorney or paralegal fees to the extent permitted by law.

## E. Additional Relief

Such other and further relief as this Court deems just and proper in the interests of equity, including referral of the matter for professional and criminal investigation into Defendants' conduct before the Wharton County court and related forums.

**JURY DEMAND**

Pursuant to **Fed. R. Civ. P. 38**, Plaintiff demands a trial by jury on all issues so triable.


**VERIFICATION AND DECLARATION UNDER PENALTY OF PERJURY**

I, **Yucob Rylander**, declare under penalty of perjury pursuant to **28 U.S.C. § 1746** that I am the Plaintiff in this action; that I have read the foregoing Complaint and know the contents thereof; that the same is true of my own knowledge except as to those matters stated to be on information and belief, and as to those matters I believe them to be true; and that I verify this Complaint as required for filings by a pro se litigant in the United States District Court for the Southern District of New York.

Executed on October, 24, 2025, at Houston, Texas.

/s/ Yucob Rylander

Yucob Rylander

7906 Prestwood Drive, Apt. 13

Houston, Texas 77036

Telephone: (832) 673-9690

Email: yakurylander@gmail.com

Plaintiff, *Pro Se*


Mary Elizondo Frazier

Bradley Arant Boult Cummings LLP

600 Travis Street, Suite 4800

Houston, Texas 77002

Archer Systems LLC

c/o Registered Agent CT Corporation System

1999 Bryan Street, Suite 900

Dallas, Texas 75201

Brent Coon & Associates

300 Fannin Street, Suite 200

Houston, Texas 77002